IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Nos. 7:18-cr-00019 |
| ) | 7:19-cr-00016 |
| ) | 7:17-cr-00079 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| FRANK CRAIG PURPERA, JR. ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

On May 4, 2020, Defendant Frank Craig Purpera, Jr. filed emergency motions for reconsideration of detention pending sentencing and for compassionate release due to increased risk of complications from COVID-19.  (Mot., Case No. 7:18-cr-00019, Dkt. No. 131; Case No. 7:19-cr-00016, Dkt. No. 102; Case No. 7:17-cr-00079, Dkt No. 235.)  He requests the court temporarily release him from custody pending sentencing pursuant to 18 U.S.C. § 3145(c) in Case Nos. 7:18-cr-00019 and 7:19-cr-00016 and grant compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) in Case No. 7:17-cr-00079.  Purpera filed identical motions and replies in all three cases, and the government filed identical responses in all three cases.  The court will refer to them in this order as one motion and reply and one response.  For the following reasons, Purpera's motion will be denied.

I.  BACKGROUND

On February 1, 2018, a jury convicted Purpera on numerous counts of obtaining controlled substances by fraud, omitting information required to document the disposition of controlled substances, and making false statements to investigators regarding his dispensation of controlled substances in Case No. 7:17-cr-00079.  On February 12, 2019, the court sentenced

Purpera to twenty months imprisonment in the custody of the Bureau of Prisons (BOP).[1] Purpera filed a motion for release from custody pending appeal, but the court found that he was a flight risk and ordered that he be taken into custody immediately.

Specifically, the court found that Purpera had substantial financial resources, faced a prison sentence, and had been charged in two additional indictments in Case Nos. 7:18-cr-00019 and 7:19-cr-00016. More importantly, the court recalled that Purpera was released on December 15, 2017, on an unsecured bond of $10,000 with the condition that he not travel outside the Western District of Virginia without permission of his supervising officer. But, in January 2019, Purpera traveled to Las Vegas, Nevada, without permission from his supervising officer, to attend a gun show despite knowing he had been convicted of a felony and was not allowed to handle guns. Instead of calling to obtain permission to leave the district, Purpera e-mailed his supervising officer on a holiday Monday night informing the officer that he would be traveling to Nevada and would return by the weekend.

As noted above, Purpera was indicted in Case No. 7:18-cr-00019 on April 19, 2018, and in Case No. 7:19-cr-00016 on February 7, 2019. Altogether, Purpera faced charges of distribution of a controlled substance, witness tampering, conspiracy to commit healthcare fraud, and healthcare fraud. The court consolidated these two cases for trial, and on January 29, 2020, a jury convicted Purpera on all counts. Sentencing in Case Nos. 7:18-cr-00019 and 7:19-cr-00016 is currently set for September 10, 2020.

Purpera now seeks release based on the recent spread of COVID-19 and the risk of outbreaks in jails and prisons. Purpera asserts that he suffers from hypertension and has a history

---

[1] As the parties note, Purpera was never transferred from the Western Virginia Regional Jail to BOP custody. Purpera estimates that his sentence is likely to be completed in July 2020.

of kidney disease,[2] which put him at higher risk of complications from the virus. He alleges that he has been taking medication for hypertension while in jail. Purpera further states that he is not a flight risk or a safety risk because he has largely exhausted his financial resources, and recent travel bans enacted in response to COVID-19 would prevent him from fleeing.

Purpera also suggests that the conditions of his confinement have made his sentence more difficult to endure than sentences served by other defendants sentenced to twenty months imprisonment. He states that he has not been allowed family visits recently, that his movement has been restricted even within the jail, and that he has not had access to programs through the BOP because he was never transferred out of Western Virginia Regional Jail (WVRJ).

## II.  ANALYSIS

### A.  Release Pending Sentencing

Purpera is not an appropriate candidate for presentencing release in Case Nos. 7:18-cr-00019 and 7:19-cr-00016. Because Purpera was convicted of a controlled substance offense, he is subject to a presumption of detention. 18 U.S.C. §§ 3142(f)(1)(A)–(C), 3143(a)(2). This rule is subject to three exceptions. "Two of the exceptions are based on the presence of specified conditions: (1) if the judicial officer finds a substantial likelihood that a motion for acquittal or new trial will be granted, or (2) if an attorney for the government recommends no sentence of imprisonment be imposed." *United States v. Goforth*, 546 F.3d 712, 713 (4th Cir. 2008) (citing 18 U.S.C. § 3143(a)(2)(A)). The third exception is a "more general exception to mandatory detention," *id.*, that allows the court to release a defendant when it "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community" and also finds "that there are exceptional reasons why such

---

[2] In his motion, Purpera also alleged that he suffers or had a history of pre-diabetes; however, in his reply brief, he states that this was "a mistake in memory." (Case No. 7:17-cr-00079, Dkt. No. 239, at 2.)

person's detention would not be appropriate," 18 U.S.C. §§ 3143(a)(1), 3145(c). *See United States v. Childs*, No. 8-19-cr-00181-DCC-7, 2020 WL 1910097, at *2 (D.S.C. Apr. 20, 2020).

Purpera moves for release pursuant to the third exception found in 18 U.S.C. § 3145(c). However, he fails to meet even the threshold requirement of that exception.

As discussed above, Purpera violated the terms of his bond in Case No. 7:17-cr-00079 by traveling to Nevada for a gun show in violation of the terms of his release, which prohibited him from leaving the district. Other courts have denied requests for bond in similar circumstances. *See United States v. Guzman*, No. 17-cr-00499-PJH-1, 2018 WL 6106381, at *2–3 (N.D. Cal. Nov. 21, 2018) (finding the defendant to be a flight risk where he, among other things, absconded from a halfway house); *United States v. Rodriguez-Rivera*, No. 07-CR-0026 (PJS/AJB), 2012 WL 2277784, at *3 n.6 (D. Minn. June 18, 2012) (noting that the defendant "could not possibly establish 'by clear and convincing evidence that [she] is not likely to flee,' given that she absconded after entering her plea and before her sentencing") (alteration in original). Purpera emphasizes that although he left the district, he nonetheless returned for his hearing, indicating that he does not intend to flee the country. But his willingness to attend court proceedings does not excuse his failure to follow court orders and obey the conditions of his release. *See Guzman*, 2018 WL 6106381, at *2 (denying release for a defendant who absconded even though the defendant "tried to call his pretrial officer, called counsel, and surrendered about 3 hours after leaving the halfway house"). Moreover, he now faces a more substantial sentence than he did when he previously violated the terms of his bond.

Purpera also asserts that the risk of his leaving the Western District of Virginia is much lower now. Because air travel is restricted and much of the country remains under state-wide precautions related to COVID-19, he asserts that "[t]here is simply nowhere to go." (Mot. 12.)

4

He also suggests that he no longer has the resources to flee because "the government has seized what few assets of Dr. Purpera's were remaining after funding his two previous trials." (*Id.*) But Purpera's reduced financial resources, the government's temporary restrictions on travel, and states' precautionary measures again do not outweigh Purpera's history of disobeying the conditions of his release.

The court agrees with the government that Purpera remains a flight risk and will therefore deny his motion for release pursuant to § 3145(c) in Case Nos. 7:18-cr-00019 and 7:19-cr-00016.[3] Purpera has a self-proclaimed love of traveling and a history of traveling outside the country. Although recent government restrictions may reduce the probability of Purpera fleeing the country, they do not prevent him from leaving the district. And regardless of Purpera's current financial resources, the fact remains that Purpera has the means to travel or evade authorities if he was determined to do so. Accordingly, the court finds that Purpera has failed to meet his burden with respect to § 3145(c).[4]

**B. Compassionate Release**

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act and in pertinent part, provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau

---

[3] Purpera asserts in a footnote in his reply brief that the court could release him under conditions of home confinement pursuant to § 3143. "Home detention . . . at best elaborately replicate[s] a detention facility without the confidence of security such a facility instills." *United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993) (internal quotations omitted) (citations omitted). Without significant monitoring, home confinement would require the court to rely on Purpera's word that he will obey the conditions of his release. *Id.* Given Purpera's history of disobeying the conditions of his release, the court finds that home confinement would not adequately address Purpera's risk of flight.

[4] Even if Purpera was not a flight risk, for the reasons addressed below, Purpera has not established by clear and convincing evidence that there are exceptional reasons why his detention is not appropriate.

> of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

In addition to satisfying the above, the reduction must be "consistent with applicable policy statement issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission's policy statement on compassionate release is set forth in U.S. Sentencing Guidelines § 1B1.13. The Policy provides, in pertinent part, that under § 3582(c)(1)(A), the court may reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a)," the court determines that:

> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. In the application notes, the Policy recognizes extraordinary and compelling reasons with regard to medical conditions (terminal illnesses or serious conditions that diminish self-care abilities), age with deterioration and significant time served, family circumstances, and other extraordinary and compelling reasons other than, or in combination with, the above reasons. U.S.S.G. § 1B1.13 n.1.

A defendant seeking relief under § 3582(c)(1)(A) has "the burden of establishing that compassionate release is warranted." *United States v. Heromin*, No. 8:11-CR-550-T-33SPF,

2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). Rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 n.3.

### 1. Exhaustion

In his motion, Purpera notes that he remains at WVRJ and has not been transferred to BOP custody. He therefore asserts that "there is no administrative procedure that he can pursue." (Mot. 6.) The government appears to concede this point. (Br. in Opp. 11 n.9, Case No. 7:17-cr-00079, Dkt. No. 238.) Accordingly, the court finds that Purpera has exhausted his administrative remedies. *See United States v. Norris*, No. 7:19-cr-36-BO-2, 2020 WL 2110640, at *2 (E.D.N.C. Apr. 30, 2020) ("The BOP has not moved for compassionate release on Norris's behalf and, because he is not at a BOP facility, there is no BOP warden to whom Norris can direct a compassionate relief request. The government has not attempted to identify any additional administrative procedures available to Norris. Consequently, the Court finds that he has exhausted his administrative remedies.").

### 2. Extraordinary and Compelling Reasons

Purpera has failed to show extraordinary or compelling reasons for his release. As noted above, Purpera bases his motion on the risk of COVID-19 outbreaks in jails. "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Harper*, No. 7:18-cr-00025, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020). Purpera alleges

7

that he suffers hypertension and has a history of stage III kidney disease, which increase his risk of severe COVID-19 illness.

There is some disagreement as to whether Purpera has adequately proven that he suffers the ailments he now claims to have. As the government notes, Purpera's Presentence Investigation Report (PSR) from Case No. 7:17-cr-00079 states that Purpera "said that his is good health and has no history of health problems." (PSR 28, Case No. 7:17-cr-00079, Dkt. No. 207.) In his reply, however, Purpera attached a note from his physician indicating that he has been diagnosed with State III Chronic Kidney Disease and "has had multiple blood pressure measurements consistent with Hypertension." (Case No. 7:17-cr-00079, Dkt. No. 239-2.) Regardless, Purpera has failed to establish extraordinary and compelling reasons for his release.

Purpera concedes that WVRJ has not reported any positive cases of COVID-19 at this time. The court is also familiar with the measures taken by WVRJ to prevent the spread of the virus. Thus, while Purpera allegedly suffers medical conditions that place him at higher risk if he were to contract COVID-19, he has failed to show a particularized risk of contracting the disease in the first place. Without more, Purpera has failed to show that his alleged health issues constitute extraordinary or compelling reasons for his release.

### 3. Section 3553 Sentencing Factors

Furthermore, the government correctly notes that the sentencing factors of § 3553 weigh in favor of continued incarceration. Purpera has a history of ignoring the law, including this court's orders, as when he violated the terms of his bond. At sentencing, the court found that the need for adequate deterrence and just punishment, and to promote respect for the law, justified

Purpera's sentence. Purpera has not convinced the court that the weight of these factors has changed since sentencing.[5] Thus, the court finds that compassionate release is not warranted.[6]

### III.  CONCLUSION

For the above reasons, it is hereby ORDERED that Purpera's motion for reconsideration of detention pending sentencing and for compassionate release (Case No. 7:18-cr-00019, Dkt. No. 131; Case No. 7:19-cr-00016, Dkt. No. 102; Case No. 7:17-cr-00079, Dkt No. 235) is DENIED. The clerk is directed to provide a copy of this order to all counsel of record.

Entered: June 17, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[5] Purpera asserts that the conditions of his confinement have made his term of imprisonment more difficult. He specifically highlights restrictions on family visits and on his movement within the jail. These measures are presumably intended to reduce the risk of a COVID-19 outbreak, which risk is the primary concern Purpera has cited in support of his motion. Purpera also asserts that he has not been afforded access to BOP programming because he has remained at WVRJ. Although the court acknowledges that it may consider the conditions of a defendant's confinement, these restrictions are not unique to Purpera. Inmates detained in BOP facilities and jails have faced similar restrictions.

[6] Purpera also suggests that the court could release him to home confinement pursuant to 18 U.S.C. § 3582(c). Section 3582 does not address home confinement, and Purpera has cited no other authority in support of his request. "While a court may make non-binding recommendations for placement in a RRC or home confinement, the BOP has the exclusive authority to determine if an inmate should be placed in such a setting and, if so, for how long." *United States v. Parks*, No. 1:17CR137, 2019 WL 5085968, at *2 (N.D. Ohio Oct. 10, 2019); *see also United States v. Shakellwood*, No. 7:16-CR-63-BO, 2019 WL 5814942, at *2 (E.D.N.C. Nov. 6, 2019) ("Whether an inmate qualifies for prerelease custody or home confinement is a decision committed to the discretion of the Attorney General or, by extension, the Bureau of Prisons.").