IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action Nos. 7:18-cr-00019 |
| | ) | 7:19-cr-00016 |
| v. | ) | |
| | ) | By:  Elizabeth K. Dillon |
| FRANK CRAIG PURPERA, JR. | ) | United States District Judge |

**MEMORANDUM OPINION**

On April 19, 2018, Frank Craig Purpera, Jr. was charged in a fifty-eight-count indictment

with distribution of a controlled substance (21 U.S.C. § 841) and witness tampering (21 U.S.C.

§ 1512), alleged to have occurred between June 2014 and January 2018.  (Case No. 7:18-cr-

00019, Dkt. No. 1.)  On February 7, 2019, in *United States v. Purpera*, 7:19-cr-00016, Purpera

was charged in a two-count indictment with conspiracy to commit health care fraud (18 U.S.C.

§ 1349) and healthcare fraud (18 U.S.C. § 1347), alleged to have occurred between February

2014 and January 2018.  (Case No. 7:19-cr-00016, Dkt. No. 1.)  The cases were consolidated for

trial.  After a seven-day trial and on January 29, 2020, a jury convicted Purpera on all counts in

both cases.  (Case No. 7:18-cr-00019, Dkt. No. 106; Case No. 7:19-cr-00016, Dkt. No. 77.)  On

February 29, 2020, Purpera filed identical motions for a new trial in each case, pursuant to

Federal Rule of Criminal Procedure 33.  (Mot. Case No. 7:18-cr-00019, Dkt. No. 112; Case No.

7:19-cr-00016, Dkt. No. 83.)  Because the motions are identical, the court refers to them, in this

opinion and in the accompanying order, as one motion.  For the following reasons, the court will

deny Purpera's motion.

I.  BACKGROUND

This is Purpera's second trial before this court for related offenses.  In an earlier case,

*United States v. Purpera*, Case No. 7:17-cr-00079, a jury convicted Purpera on sixty-seven

counts of knowingly and intentionally acquiring and obtaining controlled substances by

misrepresentation, fraud, forgery, deception, or subterfuge in violation of 21 U.S.C. § 843(a)(3).

(Case No. 7:17-cr-00079, Dkt. No. 112.)  Specifically, the government charged that Purpera, a

physician, made materially false statements to Henry Schein, Inc., a drug supplier, by denying

that he personally used any of the controlled substances or used the controlled substances in the

treatment of his spouse, family, or friends, and by falsely asserting that he administered the

controlled substances to his patients.  Purpera was also convicted of omitting material

information from a report or record required to be made and kept to document disposal of

controlled substances pursuant to 21 U.S.C. § 843(a)(4)(A) and making materially false

statements in violation of 18 U.S.C. § 1001(a)(2). [1]  (Case No. 7:17-cr-00079, Dkt. No. 112.)

As noted above, Purpera was convicted in the current cases of distribution of a controlled

substance, healthcare fraud, conspiracy to commit healthcare fraud, and witness tampering.

(Case No. 7:18-cr-00019, Dkt. No. 106; Case No. 7:19-cr-00016, Dkt. No. 77.)  The government

presented evidence that Purpera wrote his wife, Rebecca Mosig, numerous prescriptions for

controlled substances outside the scope of professional medical practice or without a legitimate

medical purpose.  As part of its case, the government introduced evidence related to the

dispensation or distribution of thousands of controlled substances obtained through Henry

Schein.  Regarding Purpera's alleged healthcare fraud, the government called numerous

witnesses who testified that Purpera instructed them to falsify patient records to meet insurance

companies' billing requirements.  According to witnesses, once the government began

---

[1] The court later acquitted Purpera on count twenty-one and conditionally granted him a new trial as to that count.  (Case No. 7:17-cr-00079, Dkt. No. 185).

investigating Purpera's practice, Purpera told his staff to "stay out of it," by answering

investigators' questions with phrases like "I don't recall."

At issue in Purpera's current motion are several decisions the court made throughout the

trial. Specifically, Purpera asserts that the court erred by declining to give his proposed jury

instructions and by allowing the introduction of evidence regarding his prior bad acts under

Federal Rule of Evidence 404(b). Purpera further argues that by overruling a number of his

"other objections" during the proceedings in these cases, the court deprived him of a fair trial.[2]

The government filed a brief in opposition to Purpera's motion, and Purpera did not file a reply

brief.

## II.  DISCUSSION

### A.  Rule 33 Standard

Federal Rule of Criminal Procedure 33 provides that a district court may, "[u]pon the

defendant's motion, . . . vacate any judgment and grant a new trial if the interest of justice so

requires." "[A]ny error of sufficient magnitude to require reversal on appeal is an adequate

ground for granting a new trial." *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004)

(quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 556 (3d ed.

2004)). However, a district court "should exercise its discretion to grant a new trial sparingly,"

and should do so only "when the evidence weighs heavily against the verdict." *United States v.*

---

[2] Notably, Purpera does not cite to any legal authority in his motion or provide any new argument on any of the errors he alleges. Instead, he apparently intends to rely on the arguments made in previous filings throughout these cases, which the court has already considered and addressed through decisions rendered on the record. Merely indicating disagreement with the court's decisions throughout the trial does not establish any "substantial errors" requiring a new trial. *See United States v. Williamson*, 81 F. Supp. 3d 85, 92 (D.D.C. 2015) ("[Defendant] cites the over 120 motions that he filed and that the Court decided before and during trial, and he indicates that he disagrees with the Court's many rulings. While these issues might be argued on appeal, they do not support his motion for new trial."). Considering that Purpera has failed to present any new theory as to how the court's application of the law deprived him of a fair trial, it should come as no surprise that the court will refuse to grant him a new trial.

*Wilson*, 118 F.3d 228, 237 (4th Cir. 1997) (quoting *United States v. Arrington*, 757 F.2d 1448, 1486 (4th Cir. 1985)).

**B.  Jury Instructions**

Purpera first argues that the court erred "in each instance where it declined to give jury instructions proposed by Dr. Purpera," or in which the court overruled Purpera's objections to the government's proposed instructions.  (Mot. 1.)  Although Purpera claims generally that every difference between his instructions and the court's instructions constitutes a reversible error, his motion focuses on the instruction setting forth the elements necessary to find him guilty under 21 U.S.C. § 841 and the willful blindness and good faith instructions.

**1.  § 841 elements instruction**

Purpera first takes issue with the third prong of the court's instruction as to the elements of § 841.  That portion of the court's instruction stated that the government must prove Purpera's "actions were not for a legitimate purpose or were outside the usual course of professional medical practice."  (Jury Instruction 15, p. 22, Case No. 7:18-cr-00019, Dkt. No. 108; Case No. 7:19-cr-00016, Dkt. No. 79.)  Purpera asserts that the court's instruction misstated the mens rea element because it did not require him to have issued the prescriptions "knowingly or intentionally" outside the usual course of professional practice or without a legitimate purpose. He further argues that the instruction should have required the government to prove the prescriptions were issued both outside the usual course "and" for an illegitimate purpose, instead of allowing the government to prove one or the other.

In a prior brief, Purpera cited to several Fourth Circuit cases that he argued "indicated that the defendant's knowledge that he is acting outside the scope of professional practice is required."  (Def. Jury Instructions Brief 7, Case No. 7:18-cr-00019, Dkt. No. 100; Case No.

4

7:19-cr-00016, Dkt. No. 71.)  For example, Purpera previously noted that in *United States v. Hitzig*, 63 F. App'x 83, 86 (4th Cir. 2003), the court referenced the district court's instruction "that the government was required to prove . . . that Hitzig knowingly and intentionally dispensed the controlled substances charged in the indictment 'other than for a legitimate medical purpose, and/or his actions were not within the bounds of professional medical practice.'"  But the district court's instruction in *Hitzig*, quoted later in the Fourth Circuit's opinion, did not actually include the terms "knowingly" or "intentionally" in the third element. *Id.*  Nor did the Fourth Circuit's own recitation of the third element suggest that the government must prove the defendant acted "knowingly."[3]  *Id.*; *see also United States v. Boccone*, 556 F. App'x 215, 228 (4th Cir. 2014) ("[T]o convict a medical practitioner under § 841(a)(1), the government must prove that . . . (3) his 'actions were not for legitimate medical purposes in the usual course of his professional medical practice or were beyond the bounds of medical practice.'" (quoting *United States v. Singh*, 54 F.3d 1182, 1187 (4th Cir. 1995))); *United States v. McIver*, 470 F.3d 550, 556 (4th Cir. 2006) ("Under § 841(a)(1), the government must prove . . . (3) that he did so 'outside the usual course of professional practice.'" (quoting *United States v. Moore*, 423 U.S. 122, 124 (1975))).

The court finds that its instruction correctly stated Fourth Circuit law regarding the elements of § 841.  The given instruction aligned with the elements as stated in the cases above and employed the same language used in other recent cases within the Fourth Circuit.  *See, e.g.*, *United States v. Kumar*, Case No. 4:17-cr-00005-FL-1, Dkt. No. 379 (E.D.N.C. 2019).

---

[3] In support of his proposed jury instructions, Purpera also cited to *United States v. Lawson*, 682 F.2d 480 (4th Cir. 1982), and *Sodipo v. United States*, Case No. ELH-06-0444, 2016 WL 6803765 (D. Md. Nov. 17, 2016). But those cases involved pharmacist defendants who filled prescriptions.  The defendants were merely intermediaries filling the prescriptions from the physicians.  Thus, the court required the government to prove that the defendants knew the prescriptions were issued without legitimate medical purposes or outside the usual course of medical practice.  As discussed below, Fourth Circuit cases involving physicians have not required a similar "knowing" mens rea.

As to Purpera's argument that the third element should require the government to prove that he issued the prescription for both an illegitimate medical purpose and outside the bounds of professional practice, Purpera has conceded throughout this case that the court's instruction correctly stated Fourth Circuit law.  *See Hitzig*, 63 F. App'x at 87 ("We reject Hitzig's contention that the district court erred because it did not instruct the jury that the government was required to prove that he both dispensed the controlled substances not for a legitimate medical purpose in the usual course of professional medical practice *and* in a manner that is beyond the bounds of professional medical practice."); *see also Boccone*, 556 F. App'x at 225 ("In order to convict a licensed medical provider of unlawful distribution of controlled substances, the government must prove that the provider's 'actions were not for legitimate medical purposes in the usual course of his professional practice or [were] beyond the bounds of medical practice.'" (alteration in original) (quoting *Singh*, 54 F.3d at 1187)).

## 2. Willful blindness

Purpera next argues that the court erred by giving a willful blindness instruction to the jury.  He asserts that because the willful blindness instruction was not appropriate, the jury had an additional inappropriate basis for convicting him.

"[T]he doctrine of willful blindness permits the government to prove knowledge by establishing that the defendant 'deliberately shield[ed] [himself] from clear evidence of critical facts that are strongly suggested by the circumstances.'"  *United States v. Jinwright*, 683 F.3d 471, 478–79 (4th Cir. 2012) (alterations in original) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)).  "It is appropriate to give such an instruction when the defendant claims lack of guilty knowledge in the face of evidence supporting an inference of deliberate ignorance."  *United States v. Lighty*, 616 F.3d 321, 377–78 (4th Cir. 2010).  "[C]aution

must be exercised in giving a willful blindness instruction" such that "it is appropriate only in

rare circumstances." *United States v. Ali*, 735 F.3d 176, 187 (4th Cir. 2013).

With regard to the charges against Purpera for healthcare fraud, the evidence presented at

trial indicated that Purpera instructed his staff to include false information in patient charts for

billing purposes, but that he would then deliberately avoid discovering the false information.  For

example, the insurance companies at issue required that patients first try conservative therapy or

report pain or worsening symptoms before the insurance provider would authorize surgical

procedures.  Several of Purpera's past employees testified that Purpera would instruct his staff to

note that patients tried conservative therapy or had pain even when they did not.  The employees

testified that if they did not follow Purpera's instructions, they could lose their jobs.  One

employee even stated that when Purpera took patient histories, Purpera would write a different

answer than the patient gave him.  In those situations, Purpera would tell the patient he was

writing a different answer and would not correct it unless the patient corrected him.

Purpera himself testified that when he believed his patients needed surgical procedures,

he would explain billing requirements to his patients and then discuss how the insurance

companies' policies could affect the patients' ability to obtain treatment.  He would tell patients

that their insurance would not cover procedures unless certain requirements were met.  Purpera

also testified that he would outline for his patients the American College of Phlebotomy

guidelines, which purportedly disagreed with the relevant billing requirements.  Purpera would

then let patients decide what symptoms and treatment to report.

Altogether, the evidence indicates that Purpera's staff would interview patients and

falsify the patients' records to meet the insurance companies' requirements.  Purpera would then

tell patients that they needed surgery,[4] would instruct the patients that insurance would not cover

the procedure unless they met certain requirements, and then would review the patients'

histories.  Stated differently, the evidence supports an inference that Purpera knew his staff may

have falsified his patients' charts but deliberately avoided discovering any inaccuracies by

warning patients of the billing requirements before reading back the inaccurate reports.  If, after

learning of the insurance companies' requirements, a patient did not object to the information in

his or her chart, Purpera would submit the incorrect information for billing.  Accordingly, the

court's willful blindness instruction was appropriate.

### 3.  Good faith

Purpera asserts that the court erred by "refus[ing] to give the good faith instruction as

proposed by Dr. Purpera."  (Mot. 3.)  But Purpera's scant motion fails to identify the portion of

the court's instruction to which he ascribes error.  In fact, the court, over the government's

objection, gave the jury a good faith instruction that was substantially similar to the instruction

Purpera proposed.  And *McIver*, 470 F.3d at 556 n.9, on which Purpera relied in requesting the

instruction, served as a foundation for the court's instruction.

To the extent Purpera challenges the court's instruction merely because it did not use the

exact language Purpera proposed, that simply is not a proper basis for a new trial.  Rather,

because the court's instruction accords with the Fourth Circuit's decisions in *McIver* and *United*

*States v. Hurwitz*, 459 F.3d 463, 478 (4th Cir. 2006), which apply an objective good-faith

standard, the court will decline to grant Purpera a new trial as to this portion of Purpera's

---

[4] Howard Nepstad testified that Purpera told him he might die within twenty-four hours if he did not receive treatment.  Notably, Nepstad had not gone to Purpera for treatment but was in the office only to accompany his wife, who was a patient of Purpera.  Jessica Stone, a former employee of Purpera, also testified that Purpera would tell patients they would lose their legs if they did not receive surgery.

motion.[5]  *See United States v. Wills*, 346 F.3d 476, 492 (4th Cir. 2003) (stating that the Fourth

Circuit will not reverse a conviction where the jury instructions, "taken as a whole, adequately

state the controlling law" (quoting *Teague v. Bakker*, 35 F.3d 978, 985 (4th Cir. 1994))).

## C.  Henry Schein Evidence

Purpera argues that the court erred by permitting the government to introduce evidence

that Purpera fraudulently ordered medications from Henry Schein.  He asserts that this line of

evidence was not appropriate under Federal Rule of Evidence 404(b) and unfairly impacted

Purpera's decision to testify.[6]  The court has already addressed this in a prior order, and Purpera

has again cited no case law or provided any analysis to convince the court that its decision was in

error.  The evidence that Purpera fraudulently ordered large quantities of controlled substances

from Henry Schein was relevant, necessary, and reliable, and any prejudicial effect of allowing

that evidence did not substantially outweigh the evidence's probative value.  *United States v.*

*Queen*, 132 F.3d 991, 997 (4th Cir. 1997) (setting forth the requirements for admitting evidence

under Rules 404(b) and 403).

In short, to convict Purpera under § 841 the government was required to prove that

Purpera wrote the prescriptions to his wife without a legitimate medical purpose or outside the

bounds of medical practice.  Evidence that Purpera obtained a large number of medications from

Henry Schein and gave most, if not all, of those medications to his wife weighs heavily on this

---

[5] Purpera further states that the court's "error was compounded by the Court's refusal of Dr. Purpera's proposed instruction delineating the difference between malpractice and a criminal offense." (Mot. 3.)  To the extent Purpera intends to challenge the court's refusal to give such an instruction, the court again finds that its instructions adequately stated controlling Fourth Circuit law.  Although *McIver* employed a clarifying instruction, the Fourth Circuit did not indicate that such an instruction was necessary.  To the contrary, the court stated that "[t]he jury instructions here went further in defining the proper criminal standard and distinguishing it from the civil standard than those which we approved [in prior cases]."  *McIver*, 470 F.3d at 560.

[6] Purpera does not explain how introduction of this evidence impacted his decision to testify at trial. Regardless, the court explained to Purpera his right not to testify.  Purpera waived his right voluntarily, and he has again cited no authority suggesting that a voluntary waiver in this situation warrants a new trial.

prong of the analysis.  Specifically, it indicates that Purpera was aware that his wife was taking large doses of unprescribed controlled substances and nonetheless continued to write her prescriptions for additional opioids.  Introduction of this evidence was not erroneous and does not provide a basis for the court to grant Purpera a new trial.

**D.  "Other Grounds"**

Finally, Purpera asserts broadly that by overruling Purpera's objections throughout the trial, the court deprived him of a fair trial.  He provides no specifics, cites no case law, and makes no attempt at a legal analysis or argument.  As such, Purpera has failed to state any grounds for a new trial.  *See, e.g.*, *Dranow v. United States*, 307 F.2d 545, 566–67 (8th Cir. 1962) ("Because of the generality of the foregoing statement it does not warrant any consideration by this Court.  If counsel do not specifically point out error in rulings . . . and are content to present matter to us in such a general fashion, without any reference to the record where such matter may be found so that we might make an independent judgment thereon, we will not perform the duty of counsel and search the record for specific errors.").

III.  CONCLUSION

For the reasons stated above, the court will deny Purpera's motion for a new trial.  An appropriate order will be entered.

Entered: September 2, 2020.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
United States District Judge