UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No 18 CR 19; 19 CR 16 |
| vs. ) | |
| ) | |
| ) | |
| FRANK PURPERA ) | |

**SENTENCING MEMORANDUM**

NOW COMES the Defendant FRANK PURPERA, and asks the Court impose a sentence no greater than 60 months, for the reasons set forth below:

When determining the appropriate sentence for an individual defendant, a sentencing court should impose the shortest possible sentence that (A) reflects "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (B) deters future criminal conduct; (C) protects the public from the defendant; and (D) provides the defendant with the "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553. When determining whether a given sentence is sufficient to effectuate these purposes district courts are directed to consider:

1. "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a);
2. "the kinds of sentences available," 18 U.S.C. § 3553(a);
3. the defendant's Guidelines range;
4. any relevant policy statements;
5. "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a);
6. "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a).

1

A defendant's guideline range is advisory. *United States v. Booker,* 543 U.S. 220, 244 (2005). Under *Booker* and its progeny sentencing courts may not treat the applicable guideline range as presumptively reasonable. *Nelson v. United States,* 129 S.Ct. 890, 891 (2009). Instead, the advisory guideline range is a single factor to be taken into consideration along with the other factors listed in 18 U.S.C. § 3553(a). *Kimbrough v. United States,* 552 U.S. 85, 92 (2007). In the pursuit of a just sentence, district courts may devise policies and impose sentences that are at odds with the policies articulated by the Federal Sentencing Guidelines. *Spears v. United States,* 129 S. Ct. 840 (2009). Therefore, § 3553 mandates that district courts impose a sentence "no longer than necessary" to accomplish the purposes of punishment in 18 U.S.C. § 3553(a)(2), even where that sentence falls below the applicable guideline range. In Dr. Purpera's case, there is no reason to believe that any prison sentence greater than 60 months would be necessary to serve the purposes of punishment set forth under Section 3553.

## I.    Because of the Defendant's Unique Personal Characteristics, A Lengthy Prison Sentence Is Not Necessary To Effectuate The Purposes Of Punishment Articulated In § 3553.

Dr. Purpera's personal background plainly demonstrates his commitment to his family, his education and career, and most importantly to his patients and community. Dr. Purpera has demonstrated himself to be dedicated to providing a better life to those around him through his years of study and work in the medical field. Dr. Purpera is a dedicated physician who comes before this court convicted of crimes because he took inappropriate procedural shortcuts to ensure that his wife could easily obtain medication for which nobody even disputes she had a legitimate need and because he did not follow the proper insurance billing procedures while providing care to his patients that he legitimately believed to be necessary and appropriate. Dr. Purpera's behavior

2

in this case as not admirable. It was not appropriate or proper. Indeed, it was criminal. But it was not so morally repugnant or harmful that a sentence greater than five years in prison is necessary for him to be adequately punished, deterred, or rehabilitated. A 60-month sentence is more than sufficient to meet all of the purposes of punishment.

Outside of these cases (including the related 17 CR 79), Dr. Purpera has led a model life. He had no criminal history and an exemplary career as a vascular surgeon. It is apparent from all of the evidence this Court has seen and heard that Dr. Purpera was a driven and dedicated surgeon. He worked his entirely life to be a successful surgeon, not only because he cared about his career, but also because he genuinely cared about his patients. Letters from those who know Dr. Purpera best uniformly describe him as empathetic and caring, with genuine concern for his patients. Dr. Purpera made his life from his work helping those who needed his unique skills, and he wanted to do a good job. Ultimately, these cases result from Dr. Purpera focusing on caring about his patients and about his wife and ignoring (or outright circumventing) the rules put into place to ensure that people like him did so properly. It is not excusable or forgivable that Dr. Pupera ran his practice the way that he did, but it should be at least understandable.

With regard to the narcotics charges, this Court is well aware of the facts surrounding Dr. Purpera's wife's medical condition. Dr. Purpera lived with his wife and could see her symptoms and her suffering every day. He could see that she legitimately needed the pain medication that he was prescribing to her. Naturally, he wanted to do anything he could to help her, even if that meant cutting corners that the law says should not be cut. That does not excuse his behavior, but it does help explain it and should guide the Court's understanding of why these offenses occurred and what the appropriate penalty should be. Dr. Purpera loves his wife. He wanted to

provide her appropriate medical treatment for a legitimate pain condition. He also knew that she was particularly concerned about the stigma of being a patient on chronic pain management medication, given her career and social circles. His mistake was believing it was acceptable to help her avoid that stigma by providing her medical care in contravention of the rules put into place to govern his profession. He should not have done so, but only did so out of love for his wife. It was wrong, but it was also human. There was no malicious or greedy motive behind any of his actions with regard to the narcotics charges in this case.

With regard to the insurance fraud charges, it is easier to see how one might interpret Dr. Purpera's actions as greedy or self-serving. Indeed, Dr. Purpera made a large amount of money from billing insurance companies for procedures in a manner that has now been found to be fraudulent. Dr. Purpera was certainly sloppy with his billing claim forms, and he was certainly willing to bill in a manner that he believed was most likely to result in getting paid for the most procedures he could be paid for. But at the heart of these claims were always procedures that he actually performed and that he genuinely believed to be necessary for his patients' health and well-being. The government's evidence suggesting that he was billing for procedures that he never actually performed (setting aside using one billing code in place of another), or for procedures that he performed that were not medically necessary, is frankly preposterous. Dr. Purpera never did any such thing and he never would. His billing practices were not by the book, but neither were they any sort of attempt to be paid for something that he did not legitimately believe he should be paid for. Certainly, he had philosophical disagreements with the insurance company policies. It may not have been right for him to get around those disagreements by misrepresenting what he should have reasonably known to be true about, for

example, his patients' history regarding compression socks. But essentially Dr. Purpera's crime in this case was inserting his own medical judgement above the bureaucratic requirements of insurance companies designed to promote their profitability rather than the patients' well-being. In this case, that meant finding ways to fill out forms to ensure that his patients could receive the medical procedures that he *knew* as a physician with particular expertise in this field they actually needed, and to ensure that he could be paid for doing them. Dr. Purpera was willing to do that. Was that dishonest? Perhaps it was. But it was not so dishonest or dangerous that Dr. Purpera needs to be locked up in prison for the length of time advocated by the government in this case. Five years is enough. When it is on top of losing his practice, his livelihood, his career, and his reputation, five years is enough.

This is not an offense that will ever be repeated. Dr. Purpera is not a hardened criminal or incorrigible reprobate. He has no prior criminal history. The conduct at issue in this case is in stark contrast to his life of otherwise respectable and admirable conduct.

**B.      Dr. Purpera's unlikeliness to recidivate warrants a below guideline sentence**

Studies have demonstrated that offenders such as Dr. Purpera are particularly unlikely to reoffend, and thus exhibit a greatly reduced need for deterrence. The Sentencing Commission has already demonstrated that individuals in Criminal History Category I, like Dr. Purpera, are the least likely defendants to recidivate. *See* Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, United States Sentencing Commission (2004) ("Measuring Recidivism") at 6 (13.8 percent of offenders in CHC I recidivate compared

to 55.2 percent in CHC VI).[1]  It is also important to note that "[t]here is no apparent relationship between the sentencing guideline final offense level and recidivism risk." *Id.* at 13.

With no prior arrests, Dr. Purpera had never been to jail before his sentencing in related case 17 CR 79. He has now spent the last 19 months in the Western Virginia Regional jail. That time has had a profound impact on him. It has been am eye-opening, and life -changing experience, for Dr. Purpera, a professional with no prior experience in the criminal justice system. The time Dr. Purpera has already spent behind bars has made it all too apparent to him that he cannot afford to recidivate in any way in the future. Any possible deterrence that a prison sentence might have has already been realized for Dr. Purpera by the time he has already spent in custody. It will not be enhanced through imposing a lengthy stay behind bars beyond 60 months.

With a lifetime otherwise free of criminal behavior and no prior experience in prison, Dr. Purpera exhibits a markedly low risk of recidivism. He does not present the same concerns about deterrence as the overwhelming majority of criminal defendants in federal court. Hence, in order to have a just outcome in this case, Dr. Purpera should have a lesser sentence than such other defendants would, a sentence well below the applicable guidelines range.

## II.  BALANCING THE § 3553 FACTORS

Section 3553 directs courts to impose a sentence no longer than necessary to effectuate the historic purposes of punishment: retribution, incapacitation, deterrence and rehabilitation. Because he has been convicted of serious offenses, Dr. Purpera must be punished.  However, there is

---

[1] This statistic included even technical supervised release revocations as "recidivism." If only additional convictions were counted the percentage drops below 5 percent. See Measuring Recidivism at 22.

nothing from Dr. Purpera's personal background to suggest that, after his experience in these cases, he would even think about recidivating, especially given his personal characteristics, lack of prior prison experience, and the aberrant nature of the offense conduct found in this case.

The purposes of punishment outlined in § 3553(a) simply do not justify the imposition of a guideline sentence. There is no evidence that Dr. Purpera requires incapacitation in light of his positive life experience and contributions to society. Likewise, for the same reasons, neither specific deterrence nor rehabilitation requires a sentence of incarceration. The law instructs the Court to issue a sentence sufficient to recognize "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."   18 U.S.C. § 3553(a). Imposing a prison sentence would work to unnecessarily undermine, not promote, respect for the law. Sending an empathetic professional with no history of violence to federal prison for his first offense – one involving paperwork improprieties concerning medication for his wife – would be a draconian penalty that would create a distrust and disrespect for the legal system.

This Court must promote respect for the law through its sentence. But respect for the law is not the same thing as fear of the law. A law is respected when it is tempered by mercy. Lengthy prison sentences may promote fear of the law but they do not necessarily promote respect. When a defendant who has lived a good, law-abiding life outside of his conviction receives a sentence that takes into account his life of positive contributions to the community and the daunting nature of a first federal criminal sentence, that sentence demonstrates that the justice system is indeed reasonable. And that, above all things, promotes respect for the law.

For a man of Dr. Purpera's background and experience, a sentence of 60 months is an incredibly serious sentence that will satisfy all of the purposes of punishment under §3553. Thus,

no prison sentence greater than that amount is necessary to promote respect for the law in this case. For this offense, for this defendant, a sentence of 60 months is the appropriate and just sentence.

      WHEREFORE, Dr. Purpera respectfully requests that this Court impose a sentence of 60 months' imprisonment concurrent to the sentence issued by this Court in his prior case.

      Respectfully submitted,

      By: <u>s/Beau B. Brindley</u>

Beau B. Brindley
LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
(312) 765-8878

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2020, I electronically filed the foregoing memorandum and this Certificate with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s Beau B. Brindley
Attorney for Frank Purpera
