IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action Nos. 7:18-cr-00019 |
| ) | 7:19-cr-00016 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| FRANK CRAIG PURPERA, JR. ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Frank Craig Purpera Jr.'s *pro se* motion for compassionate release. (Case No. 7:18-cr-00019, Dkt. No. 205; Case No. 7:19-cr-00016, Dkt. No. 170.) Purpera claims that the Bureau of Prisons (BOP) has miscalculated his First Step Act (FSA) credits and has punitively revoked his Second Chance Reauthorization Act (SCRA) credits. Purpera also contends that the BOP is not adequately treating his medical conditions. The United States opposes this motion. (Case No. 7:18-cr-00019, Dkt. No. 206; Case No. 7:19-cr-00016, Dkt. No. 171.) For the reasons stated below, Purpera's motion will be denied.

I.  BACKGROUND

On February 1, 2018, a jury convicted Purpera on numerous counts of obtaining controlled substances by fraud, omitting information required to document the disposition of controlled substances, and making false statements to investigators regarding his dispensation of controlled substances in Case No. 7:17-cr-00079. (Case No. 7:17-cr-00079, Dkt. No. 112.) On February 12, 2019, the court sentenced Purpera to twenty months' imprisonment in the custody of the BOP on these charges.

On April 19, 2018, Purpera was charged in a fifty-eight-count indictment with distribution of a controlled substance (21 U.S.C. § 841) and witness tampering (21 U.S.C. § 1512), alleged to have occurred between June 2014 and January 2018. (Case No. 7:18-cr-

00019, Dkt. No. 1.)  On February 7, 2019, in *United States v. Purpera*, 7:19-cr-00016, Purpera was charged in a two-count indictment with conspiracy to commit healthcare fraud (18 U.S.C. § 1349) and healthcare fraud (18 U.S.C. § 1347), alleged to have occurred between February 2014 and January 2018.  (Case No. 7:19-cr-00016, Dkt. No. 1.)  The latter two cases were consolidated for trial.  The government presented evidence at trial that Purpera wrote his wife numerous prescriptions for controlled substances outside the scope of professional medical practice or without a legitimate medical purpose.  After a seven-day trial and on January 29, 2020, a jury convicted Purpera on all counts in both cases.  (Case No. 7:18-cr-00019, Dkt. No. 106; Case No. 7:19-cr-00016, Dkt. No. 77.)  On September 24, 2020, the court sentenced Purpera to ninety months for Counts 1–52 and 57–58 and sixty months for Counts 53–56 in Case No. 7:18-cr-00019, and ninety months as to Counts 1 and 2 in Case No. 7:19-cr-00016, all to run concurrently with Purpera's twenty-month sentence in Case No. 7:17-cr-00079.  The court later amended its judgment to clarify how the sentences were to run concurrently, changing Purpera's sentence to seventy-three months for Counts 1–52 and 57–58 and sixty months for Counts 53–56 in Case No. 7:18-cr-00019, and seventy-three months as to Counts 1 and 2 in Case No. 7:19-cr-00016, all to run concurrently.  (Case No. 7:18-cr-00019, Dkt. No. 200; Case No. 7:19-cr-00016, Dkt. No. 166.)

Purpera has filed identical motions for compassionate release in his 2018 and 2019 cases; therefore, the court will refer to them in this opinion and accompanying order as one motion and will cite only to the motion in the 2018 case, unless otherwise noted.[1]  Purpera seeks release

---

[1] Purpera previously moved for compassionate release on May 4, 2020, before he was sentenced in his 2018 and 2019 cases.  (Case No. 7:17-cr-00079, Dkt. No. 235.)  Purpera argued that his history of kidney disease, pre-diabetes, and hypertension put him at high-risk of complications from Covid-19.  (*Id.* at 1.)  The court ultimately denied Purpera compassionate release and found that he failed to establish extraordinary and compelling reasons for his release because there was no outbreak of Covid-19 in the facility where he was incarcerated at the time and he could not show a particularized risk of contracting Covid-19.  (Case No. 7:17-cr-00079, Dkt. No. 240, at 7–8.)

based on his belief that the BOP miscalculated his FSA credits and punitively revoked his SCRA credits. (Mot. 1–2, Dkt. No. 205-1.) Purpera also contends that his medical and dental needs are not being adequately addressed in BOP custody. (*Id.* at 2.) He claims that he has gone without medication for his hypertension, hyperlipidemia, depression, and anxiety for extended periods of time and does not have access to one of the medications he previously used to treat his depression. (*Id.*) Purpera does not attach any additional medical documentation regarding his medical conditions other than a list of the medications he currently takes. (*Id.* at 4.)

Purpera's motion includes a copy of his request to the warden of FCI McDowell dated November 21, 2023, asking for compassionate release because of his medical issues; this was thirty-seven days before Purpera filed this motion on December 28, 2023. (Dkt. No. 205-3.) Purpera reports that he has not yet received a response. (*Id.* at 3.)

## II.  ANALYSIS

### A. Compassionate Release Under the First Step Act

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence under certain circumstances. As amended by the First Step Act and in pertinent part, the statute provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –

>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i).  If a court finds extraordinary and compelling reasons for release, it must then consider the 18 U.S.C. § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's sentence.  *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021).

In addition to satisfying the above, the reduction must be "consistent with [the] applicable policy statement [] issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1).  The applicable policy statement for compassionate release is found in U.S. Sentencing Guidelines (U.S.S.G.) § 1B1.13 and Commentary.  That section was amended, effective November 1, 2023, and now provides an expanded list of "extraordinary and compelling reasons" warranting compassionate release.  *See* U.S.S.G. § 1B1.13.

Based on the requirements of § 3582(c)(1)(A), Purpera's motion requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

As the movant, "[a] defendant seeking compassionate release has the burden of establishing that such relief is warranted."  *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020); *see also United States v. Hargrove,* 30 F.4th 189, 195 (4th Cir. 2022) (noting the information provided by the inmate "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release"); *United States v. Brewington*, No. 2:12CR00009-007, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019); *United States v. Weaver*, No. 1:17-CR-235, 2020 WL 4810123, at *2 (E.D. Va. Aug. 18, 2020) (citing

4

*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56–57 (2005) (defendant bears burden as party seeking relief absent statutory guidance to the contrary)). Additionally, compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

**B. Exhaustion**

The court begins by considering exhaustion, the threshold requirement for obtaining relief under § 3582(c)(1)(A). *United States v. Muhammad*, 16 F. 4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and *either* fully exhausts all administrative rights to appeal the Bureau's decision *or* waits 30 days from the date of their initial request to file a motion in the district court." *Id.* at 131. As mentioned above, Purpera sent his initial request for compassionate release to the warden on November 21, 2023, and filed this motion on December 28, 2023, more than thirty days later. Thus, the court finds that Purpera has satisfied the statute's exhaustion requirement.[2]

**C. Extraordinary and Compelling Reasons**

The court must next consider whether Purpera has shown "extraordinary and compelling" circumstances so as to render him eligible for compassionate release. As noted, Purpera references several chronic health conditions that he alleges the BOP is not properly treating as grounds for relief.

**1. Medical conditions**

The United States Sentencing Commission recently amended the section of the guidelines that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant

---

[2] The United States does not contest that Purpera exhausted his administrative remedies.

alleges that "extraordinary and compelling" reasons warrant a reduction. *See* U.S. Sentencing Guidelines ("U.S.S.G." or "guidelines"), §1B1.13 (Nov. 2023).

A defendant may show an extraordinary and compelling reason for a sentence reduction based on medical circumstances when he can demonstrate the following:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(A)–(C). Purpera lists several long-term conditions that he claims the BOP is not properly treating (hypertension, hyperlipidemia, depression, and anxiety). (Suppl. to Mot. 1, Dkt. No. 205-1, at 2.) Based on the record before the court, though, he has not shown that any of these illnesses are terminal or "require[] long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."[3] U.S.S.G. § 1B1.13(b)(1)(C). Purpera instead argues that, upon release, he will "be able

---

[3] For example, a court found that an inmate suffering from "difficulty breathing, stage three chronic kidney disease, type two diabetes, diabetes-related neuropathy, and inability to walk without assistance[]" was entitled to

6

to obtain better and consistent care medical care through the private providers." (Suppl. to Mot. 1, Dkt. No. 205-1, at 2.)  Just because the treatment Purpera would receive outside the BOP may be "better" or "more consistent" does not mean that continuing medical care in the BOP would cause a "serious deterioration in [his] health or death." (Suppl. to Mot. 1, Dkt. No. 205-1, at 2.) *See, e.g., United States v. Pigford*, No. CR 20-414, 2023 WL 2285825 (E.D. Pa. Feb. 28, 2023) (inmate needing to see a specialist for non-emergent knee problem was not entitled to compassionate release).  He may be able to show extraordinary and compelling circumstances that warrant compassionate release in the future, but he has not done so here. Thus, his request for compassionate release based on his medical conditions will be denied without prejudice.

### D. Alleged Miscalculation of FSA Credits and Revocation of SCRA Credits

As noted, Purpera also requests compassionate release on the grounds that the BOP miscalculated his FSA credits and punitively revoked his SCRA credits.  Purpera claims that the BOP did not respond to the court's amended judgment entered on October 5, 2023, until forty-seven days later when it provided him a Supervised Release Plan (SRP), a calculation of his time credits under the FSA and SCRA, and a pre-release custody date of February 1, 2024.  (Suppl. to Mot. 1, Dkt. No. 205-1.)  Several days later, Purpera was informed that he had earned additional FSA credits, and he requested those be applied to his sentence. (*Id.*)  The BOP then provided him with a new SRP with a new pre-release custody date of March 19, 2024, without explanation for the change of date; Purpera believes this change was a punitive response to his request for the application of his additional FSA credits. (*Id.* at 1–2.)  Purpera also claims that the entirety of his FSA calculations is in error because he was not granted time served for the time he spent in a local facility. (*Id.* at 2.)  He additionally objects to his inability to earn FSA credits during the

---

relief under U.S.S.G. § 1B1.13(b)(1)(C).  *United States v. Samuel*, No. CR ELH-16-0117, 2023 WL 8650366, at *15 (D. Md. Dec. 14, 2023).

time he served in his 2017 case. (*Id.*)

A motion for compassionate release is not the proper vehicle to challenge the BOP's calculation of a prisoner's sentence. Instead, the prisoner must bring such a challenge in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, after first fully exhausting his administrative remedies with the Bureau of Prisons. *United States v. Snead*, 664 F. App'x 270, 271 (4th Cir. 2016) ("[A] federal prisoner must challenge the calculation of his sentence via the appropriate administrative channels, and if necessary, in a habeas petition under 28 U.S.C. § 2241.") (citing *United States v. Miller*, 871 F.2d 488, 489–90 (4th Cir. 1989) (*per curiam*)). *See also Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) (challenge to time credit "fell squarely" within the scope of habeas); *Cason v. Maryland Div. of Corr.*, No. 21-6290, 2022 WL 1074521 at *2 (4th Cir. Apr. 11, 2022) ("[A] writ of habeas corpus is the sole federal remedy for the deprivation of good conduct credits that would shorten a state prisoner's sentence."). If Purpera wishes to challenge the BOP's calculations of his time credits, he should do so in a § 2241 petition.

Additionally, petitions under 28 U.S.C. § 2241 must be brought in the district in which the petitioner is incarcerated. *United States v. Little*, 392 F.3d 671, 680 (4th Cir. 2004) (explaining that a § 2241 petition seeking sentencing credit must be brought in the district where the petitioner is confined). Purpera is currently incarcerated at FCI McDowell in Welch, West Virginia, which is within the Southern District of West Virginia. If he elects to file a § 2241 petition to raise this issue and remains incarcerated there, he should file it in that court. Because Purpera must bring this challenge to his sentence under § 2241, his motion for compassionate release will be denied without prejudice insofar as it seeks to compensate for the BOP's alleged miscalculation of his FSA credits and revocation of his SCRA credits.

### III. CONCLUSION AND ORDER

Based on the foregoing, it is hereby ORDERED that Purpera's motion for compassionate release (Case No. 7:18-cr-00019, Dkt. No. 205; Case No. 7:19-cr-00016, Dkt. No. 170) is DENIED WITHOUT PREJUDICE. The clerk is directed to provide a copy of this memorandum opinion and order to Purpera, all counsel of record, and the United States Probation Office.

Entered: January 29, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge